## Fitch et al., Appellants, v. Buckingham et al.

**Injunction, Dissolution of.** Plaintiffs sought by injunction to restrain defendants from selling under a deed of trust given by him on his land to secure the payment of four promissory notes. The petition in substance alleged the insolvency of defendants; that the first two notes had been paid and plaintiffs had issued to defendants a warehouse receipt, which the latter agreed, if not returned within two months from its date, should be applied to the payment of the third note then past due, the remainder thereof, if any, to be applied on the other note; that said receipt was not returned within the two months, the defendants having negotiated and transferred it beyond their control. *Held,* that the preliminary injunction was rightly dissolved and the bill properly dismissed, the evidence failing to establish the agreement and other facts alleged in the petition as grounds for the relief sought.

*Appeal from Johnson Circuit Court.*—Hon. Noah M. Givan, Judge.

AFFIRMED.

*S. P. Sparks* and *Smith & Krauthoff* for appellants.

(1) The assignment of the notes in controversy to H. H. Curtis by G. Buckingham was voluntary, upon no consideration, and being upon a secret trust or use for him as is clearly shown by his subsequent control of them in placing a credit of $489.49 on one of the notes, was fraudulent as to plaintiffs, who were existing creditors. *State v. Benoist,* 37 Mo. 500; *State v. Trasker,* 31 Mo. 445; Story's Eq. Juris., § 380; *Potter v. McDowell,* 31 Mo. 62; Bump on Fraud. Convey., pp. 190, 191. (2) The transfers being fraudulent and void as to plaintiffs, and the defendants being insolvent, the plaintiffs were entitled in equity to have the value of the warehouse receipt off-setted against the notes, this would have been natural equity. Story's Eq. Juris., vol. II., § 1435 (1870); *Barnes v. McMullins,* 78 Mo. 260; *Baker v.*

*Brown*, 10 Mo. 396. (3) The paper was past due and non-negotiable, and conceding that the transfer was *bona fide*, yet, it was to secure an antecedent indebtedness of the assignor, and the plaintiffs were entitled to have the indebtedness of defendants' set-off against it. 1 R. S., § 3868; *Munday v. Clements*, 58 Mo. 577. (4) Notwithstanding the fact that the notes were endorsed to Curtis, it does not appear that the possession of the notes themselves was ever delivered to him, and without this his title was incomplete. *Claflin v. Roseberg*, 42 Mo. 439; *State ex rel. Pierce v. Merritt*, 70 Mo. 275. (5) The petition prayed that the warehouse receipt be deducted from the amount of the notes, and the allegations and proof show that plaintiffs were entitled to have it offset against the notes, and the court should have so decreed. Story's Eq. Juris., § 1435; *Lanesborough v. Jones*, 1 P. Williams, 326; *Green v. Darling*, 5 Mason 207, 213. A court of equity has the power to grant any relief consistent with the allegations of the petition. *Henderson v. Dickey*, 50 Mo. 161; *Peyton v. Rose*, 41 Mo. 263.

*George E. Smith* and *P. R. Flitcraft* for respondents.

(1) There is no equity in the amended bill. (2) A sale under a power will not be enjoined in order that the mortgageor may be enabled to set-off a balance which may be found in his favor upon unliquidated claims in controversy between him and the mortgagee. 2 Jones on Mortgages, § 1811 (2nd Ed.); *Frieze v. Chapin*, 2 R. I. 429, 434; *Robertson v. Hogshead*, 3 Leigh. (Va.) 672; *Koger v. Kane*, 5 Leigh. (Va.) 606; *Outtrim v. Graves*, 1 Barb. ch. 49. In the case of *Robertson v. Hogshead*, *supra*, the court say: "It has been long settled that unliquidated damages cannot be set-off in equity," and cite: *Duncan v. Lyon*, 3 Johns. ch. 351; *Livingston v. Livingston*, 4 Johns. ch. 287; *Webster v. Church*, 6 Rand. 519. (3) No claims can be set-off against the mortgage debt, except such as have been ex-

pressly agreed to be payment. *Dudley v. Bergen*, 23 N. J. Eq. 397 ; *White v. Williams*, 2 Green Ch. R. 376 ; *Dolman v. Cook*, 1 McCarter 56 ; *Bird v. Davis*, 1 McCarter 467 ; 3 Powell on Mortgages, 945, note 1 ; 2 Jones on Mortgages, § 1498. (4) There must either have been a direct payment of part of the debt or an agreement that the sum proposed to be set-off should be received and credited as payment on the mortgage debt. An independent claim of the mortgageor cannot be set-off against the mortgage debt. *Dolman v. Clark*, 14 N. J. Eq. 68 ; *White v. Williams*, 3 N. J. Eq. (2 Green) 376. (5) And the claim sought to be set-off must have been due at the time the proceedings were instituted. *Holden v. Gilbert*, 7 Paige 208 ; *Knapp v. Buchanan*, 11 Paige 330 ; *Thompson v. Ellsworth*, 1 Barb. ch. 624. (6) Plaintiffs should first have established their claim by the judgment of a court of law. *Martin v. Michael*, 23 Mo. 50 ; *Merry v. Freman*, 44 Mo. 518 ; *Turner v. Adams*, 46 Mo. 95 ; *Kent v. Curtis*, 4 Mo. App. 121. (7) The endorsement of the notes to Curtis was meritorious and even if open to attack in this case might well be sustained in a court of equity. *Payne v. Twyman*, 68 Mo. 339 ; *Hauessler v. Greene*, 8 Mo. App. 451 ; *Tolle v. Boeckler*, 12 Mo. App. 54. (8) The notes were negotiable. *Gulett v. Hoy*, 15 Mo. 399 ; *Barnes v. McMullins*, 78 Mo. 260 ; *Haeussler v. Greene*, 8 Mo. App. 451. (9) Nor is it material that the endorsee gave no value for the paper, or that it was endorsed expressly to defeat the right of set-off. *Haeussler v. Greene, supra* ; Daniel on Neg. Inst., § 725 ; Byles on Bills, 130.

NORTON, J.—This suit was instituted in the Johnson county circuit court to restrain defendants from selling certain real estate under a deed of trust executed in 1878 by S. M. Fitch, E. C. Fitch, and F. M. Smithson, to secure the payment of five certain promissory notes therein specified. The petition alleges that the first two notes had been fully paid, and that defendants were

about to proceed to advertise and sell the property to pay the whole of the third, fourth, and fifth notes, all of which had become due and payable at the time suit was brought. The insolvency of defendants is alleged and as the only other ground for invoking the injunctive power of the court, it is alleged that: "On the thirty-first day of January, 1881, the said third note being past due and for the purpose of paying same off, they did, at the special instance and request of the said Buckingham & Son, issue and deliver to said firm a certain warehouse receipt in the following words and figures, to-wit:

"No. ———

### "WARRENSBURG GRAIN ELEVATOR.

"WARRENSBURG, Mo., January 31, 1881.

"Received in store from H. R. Fitch & Co., one thousand bushels of number two wheat in bin number twenty-five, subject only to the order of Buckingham & Son and the surrender of this receipt and payment of charges.

"H. R. FITCH & Co.

"Which said warehouse receipt was issued and delivered to G. & S. C. Buckingham, with the understanding and upon an agreement that if said warehouse receipt should not be returned to plaintiffs within two months from the date thereof, then the said G. Buckingham would apply the amount of its market value to the payment of the note so past due, and the balance, if any, to be applied by him to the payment of the other note held by him. But that the said Buckingham & Son, nor either of them ever returned said warehouse receipt within two months, but have negotiated and transferred the same beyond their control ; that the same is now held and owned by the Third National Bank of the city of St. Louis, and that said G. Buckingham has failed and refused, and still fails and refuses to credit on said note or to give plaintiffs any credit whatever on the notes so

held by him in any amount for, or on account of said ware-house receipt. That plaintiffs have ever since the issuance and delivery of said warehouse receipt by them as afore-said, kept said wheat in bin number twenty-five in their grain elevator at the city of Warrensburg, Missouri. That plaintiffs have at all times been ready and willing since the issuance thereof to deliver said wheat to the order of said Buckingham & Son. That the value of said wheat has been at all times since the issuance of said receipt at its reasonable market value—twelve hundred dollars.''

The petition prayed for a temporary injunction, and that upon a final hearing, these defendants account for and credit on their said indebtedness so secured by said deed of trust, the amount and value of the warehouse receipt at the time of the issuance of the same, and that upon payment of the balance due on said notes they be permitted to redeem said premises from the lien of said trust deed.

The answer was a general denial except as to matter specially admitted as to the execution of the deed of trust and notes. It then sets up the following facts in relation to the warehouse receipt, viz.: That it was issued by H. R. Fitch & Co. in favor of Buckingham & Son to be used, and was used as collateral security in bank; that it was issued on the thirty-first day of January, 1881, but was dated January 31, 1879; that on the eighteenth of April, 1881, plaintiffs took up said receipt and issued a new one, dated January 31, 1881, which was used as collateral in bank by Buckingham & Son, up to the commencement of this suit, "before which time plaintiffs had not been called upon to deliver any portion of said wheat, nor to pay any money in its stead." The answer contained a specific denial that Buckingham & Son, or either of them, ever promised to credit the market value of said ware-house receipt upon the notes, or any of them, and avers that said Buckingham & Son, to whom the said receipt was issued, have valid claims against plaintiffs of greater

amount than could arise on said receipt, for which suits are now pending in the circuit court of Johnson county. Replication was filed to the answer, and on the trial the injunction was dissolved and bill dismissed, from which action of the court plaintiffs have appealed.

It will be observed that the right of plaintiffs to the relief prayed for in the petition is predicated upon an alleged agreement that the market value of the warehouse receipt, if not returned within two months to plaintiffs after its date, was to be applied to the payment of the third note then past due, and if any remained over, to be applied to the other notes. All the evidence in the case was offered by plaintiffs, and we have looked through it in vain to discover any which establishes the agreement set up in the petition. It is shown by the evidence that plaintiffs were grain buyers and elevator proprietors in Warrensburg, and that they were shipping grain to the defendants, Buckingham & Son, who were grain and produce commission merchants in St. Louis. The testimony of Buckingham, who was introduced as a witness, and the correspondence offered in evidence tended to show that there were other unsettled claims between the houses besides the warehouse receipt and the notes secured by the deed of trust, and that on the twenty-fourth of January, 1881, wrote to plaintiffs, saying among other things :

"Will you accomodate us by an accommodation warehouse receipt for say enough wheat to cover between $500 and $1,000, which we want to use temporarily only, and will doubtless be restored to you in a month or two at outside."

On the thirty-first day of January, 1881, plaintiffs enclosed the warehouse receipt, which, through mistake, was dated January 31, 1879 ; nothing was said in the letter enclosing it, or intimated that its market value, if it was not returned, was to be applied on the third deed of trust note. This receipt was used by defendants as collateral in obtaining a loan of money. When the mistake

in the date of the receipt was discovered in April, 1881, more than two months after the issue, and when it was brought to the attention of plaintiffs, they, with knowledge of the fact that the receipt was held by a bank in St. Louis as collateral for money loaned, issued another receipt, dated April 18, 1881, and returned it without mentioning or hinting to defendants that its market value was to be credited on the notes in question. Buckingham, who was plaintiffs' witness, testified that the receipt was an accommodation receipt, and used as collateral security with the knowledge and consent of plaintiffs. This witness, also, swore positively that the name of Buckingham & Son was used as the payee of the notes in question for general convenience in using the paper, and that the money which went into the notes was his individual money, and that when said firm dissolved in 1879, they transferred the notes to him by endorsement, and that the firm of Buckingham & Son had no interest in said notes. In view of this state of facts and the further fact, which the evidence tended to show, that as to the plaintiffs, Buckingham & Son, were not insolvent, inasmuch as plaintiffs were indebted on other debts to defendants outside of these notes in an amount equal to or greater in value than the receipt, the trial court did right in dissolving the injunction and dismissing the bill, and its judgment is hereby affirmed. All concur.